FILED

OCT 2 5 2007

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. _____ |
| | § | |
| JOSEPH GRANT GOMEZ, | § | A07 CR-211 LY |
| | § | |
| Defendant. | § | |

## FACTUAL BASIS

Had this matter proceeded to trial, the United States Attorney was prepared to prove

beyond a reasonable doubt the following facts through the testimony of witnesses and

introduction of documentary evidence:

1.    At all times relevant to the Information, the Defendant, JOSEPH GRANT

GOMEZ, was a resident of Austin, Texas, in the Western District of Texas.

### The Defendant's 2000 Federal Income Tax Return

2.    In August 1995, a partnership known as Phoenix Holdings, Ltd. (PHLTD) and a

subchapter S corporation known as Phoenix Holdings GP, Inc. (PHGP) were created.  PHGP was

the general partner of PHLTD.  Defendant GOMEZ was a 39.6% limited partner in PHLTD and a

30% shareholder in PHGP.

3.    From 1995 through 1999, Defendant GOMEZ received a Schedule K-1 (Partner's

Share of Income, Credits, Deductions, etc.) from PHLTD and a Schedule K-1 (Shareholder's Share

of Income, Credits, Deductions, etc.) from PHGP, showing his pro rata share of income that he was

required to report on his joint federal income tax returns. Each Schedule K-1 was provided to his return preparer who subsequently prepared Defendant GOMEZ's joint federal income tax returns.

4.    In or about mid-1999, Defendant GOMEZ expressed a desire to dispose of his partnership interest in PHLTD and his stock in PHGP. On December 31, 1999, Defendant GOMEZ was still a partner of PHLTD and a stockholder of PHGP.

5.    From January 1, 2000 through late June 2000, Defendant GOMEZ was a limited partner in PHLTD and a stockholder in PHGP. During this time period, Defendant GOMEZ executed several resolutions as a limited partner of PHLTD.

6.    As a partner in PHLTD and a stockholder in PHGP, during the period January 1, 2000, through late June 2000, Defendant GOMEZ constructively received $1,566,984 and $15,169 from PHLTD and PHGP, respectively (see Attachment A, paragraphs 1 and 3). These amounts constituted Defendant GOMEZ's pro rata share of income which he knew he was required to report on his joint federal income tax return.

7.    In late June 2000, Defendant GOMEZ disposed of his partnership interest in PHLTD and his stock in PHGP for which he received cash or cash equivalent. Once Defendant GOMEZ disposed of his partnership interest in PHLTD and his stock in PHGP, Defendant GOMEZ ceased being a limited partner in PHLTD and a stockholder in PHGP.

8.    In March 2000, Defendant GOMEZ received a total of $100,000 as an interest payment on money previously loaned to PHLTD. This money was deposited to bank accounts owned and or controlled by Defendant GOMEZ. In November 2000, Defendant Gomez received an additional interest payment of $8,173.

9.    In 2001, Defendant GOMEZ delivered, or caused to be delivered, various documents

to his return preparer so that the return preparer could prepare his joint federal income tax return for tax year 2000 (Form 1040). Defendant GOMEZ intentionally and willfully failed to inform his return preparer about, or deliver any documents to his return preparer concerning the interest income he received for PHLTD, his pro-rata share of income from PHLTD and PHGP, the disposition of his partnership interest in PHLTD, and the disposition of his stock in PHGP.

10.    On or about October 15, 2001, in the Western District of Texas, Defendant GOMEZ signed his joint federal income tax return for tax year 2000 (Form 1040) and filed it with the Internal Revenue Service at the Austin Service Center, Austin, Texas. Defendant GOMEZ willfully made and subscribed the return, under the penalties of perjury, which he did not then believe to be true and correct as to every material matter, in that he knew the return omitted the following: (1) interest income he received from PHLTD, (2) his pro rata share of income from PHLTD or PHGP for the time period January 2000 through June 2000; (3) the gain or loss from the disposition of his partnership interest in PHLTD; and (4) the gain or loss from the disposition of his stock in PHGP.

### The Defendant's 2001 Federal Income Tax Return

11.    In or about November 1994, a limited partnership known as Thompson MedTech Ventures, LP (MedTech) was created. The sole purpose of the partnership was to acquire, own, manage and dispose of 80,000 shares of common stock of Agennix Incorporated. Defendant GOMEZ was a 7.5% limited partner in MedTech. During 1994 and 1995, Defendant GOMEZ contributed a total of $150,000 to the MedTech partnership to assist in the purchase of the Agennix stock.

12.    In or about mid-1995, a limited partnership known as Thompson MedTech Ventures II, LP (MedTech II) was created. The sole purpose of the partnership was to acquire, own, manage

and dispose of 12,500 shares of common stock of Agennix Incorporated. Defendant GOMEZ was a 3.13% limited partner in MedTech II. During 1995, Defendant GOMEZ contributed a total of $5,000 to the MedTech II partnership to assist in the purchase of the Agennix stock.

13.    Each year from 1994 through 2000, Defendant GOMEZ received a Schedule K-1 (Partner's Share of Income, Credits, Deductions, etc.) from both MedTech and MedTech II showing his pro rata share of income that he was required to report on his personal income tax returns. All of these Schedule K-1's showed that Defendant GOMEZ had no income in which he was required to report on his personal income tax returns. None of these Schedule K-1's were ever given to Defendant GOMEZ's return preparer.

14.    In January 2001, the Agennix stock held by MedTech and MedTech II was sold. This resulted in a significant gain to the partners of both partnerships, including Defendant GOMEZ.

15.    Shortly after the sale of the Agennix stock, Defendant GOMEZ knowingly received $503,723 from MedTech and $25,275 from MedTech II. This money was deposited to bank accounts owned and/or controlled by Defendant GOMEZ. This money represented the return of Defendant GOMEZ' contributions as well as his pro rata share of the gain on the disposition of the Agennix stock. The proceeds are summarized as follows:

|                     | MedTech    | MedTech II |
| ------------------- | ---------- | ---------- |
| Return of Capital   | $ 150,000  | $  5,000   |
| Net Long Term Gain  | $ 353,723  | $ 20,275   |
| Total               | $ 503,723  | $ 25,275   |

16.    The 2001 partnership returns and associated Schedule K-1s for MedTech and MedTech II were prepared in or about mid-2002. Shortly thereafter, Defendant GOMEZ received

a Schedule K-1 from MedTech showing that he was required to report $353,723 as a "net long term capital gain" on his joint federal income tax return for tax year 2001 (Form 1040). Defendant GOMEZ also received a Schedule K-1 from MedTech II showing that he was required to report $20,275 as a "net long term capital gain" on his joint federal income tax return for tax year 2001 (Form 1040).

17.     In 2002, Defendant GOMEZ delivered, or caused to be delivered, various documents to his return preparer so that the return preparer could prepare his joint federal income tax return for tax year 2001 (Form 1040). Defendant GOMEZ knowingly and intentionally did not inform his return preparer about the Agennix stock transactions, or forward either Schedule K-1 he received from MedTech or MedTech II to his return preparer so that the return preparer could include the "net long term capital gains" on his joint federal income tax returns for tax year 2001.

18.     In 2001, trust account #XXXXXXXX8374[1] was established at Bank of America for Defendant GOMEZ. The principal activity in this account was the buying and selling of stocks. Throughout 2001, numerous stock transactions occurred which resulted in income which was required to be reported on Defendant GOMEZ's personal income tax return.

19.     In 2002, Defendant GOMEZ received documents from Bank of America regarding trust account #XXXXXXXX8374 which reflected interest income of $7,250, dividend income of $60,917, a short term capital loss of $1,825 and a long term capital gain of $472,467. The Defendant knew these amounts were required to be reported on his joint federal income for tax year 2001 (Form 1040). Defendant GOMEZ intentionally did not forward these documents to his return

---

[1] To protect privacy and security concerns, only the last four digits of the financial account number are included. *See* proposed Fed. R. Crim. P. 49.1(a)(4) (to be effective December 1, 2007, absent contrary Congressional action).

preparer so that the return preparer could include these items on his joint income tax return for the tax year 2001. Defendant GOMEZ did not tell his return preparer about Bank of America trust account #XXXXXXXX8374 trust account which was established in 2001.

20. On or about October 11, 2002, Defendant GOMEZ signed his joint federal income tax return for tax year 2001 (Form 1040). On or about October 15, 2002, in the Western District of Texas, Defendant GOMEZ filed his joint income tax return for tax year 2001 (Form 1040) with the Internal Revenue Service at the Austin Service Center, Austin, Texas. Defendant GOMEZ willfully made and subscribed the return, under the penalties of perjury, which he did not then believe to be true and correct as to every material matter, in that he knew the return did not report any of his income from MedTech, MedTech II, or the Bank of America trust account, which the Defendant knew he was required to report on his income tax return.

### The Defendant's 2002 Federal Tax Return

21. In February 2001, Overcollateralized Investment Fund, LP (OIF), was formed to raise money to be loaned to BudaTech, LP, which was to purchase a tract of land. Defendant GOMEZ loaned $3,000,000 to OIF. Defendant GOMEZ was to receive 20% interest annually on the money he loaned to OIF.

22. In September 2002, Defendant GOMEZ received an interest payment of $600,000 on the money he loaned to OIF. This money was deposited to a bank account owned and/or controlled by Defendant GOMEZ.

23. In addition, during 2002, the Bank of America trust account #XXXXXXXX8374 continued its principal activity of buying and selling stocks. During 2002, numerous stock transactions occurred which resulted in income which was required to be reported on Defendant

GOMEZ's joint federal income tax return.

24.    In 2003, Defendant GOMEZ received documents from Bank of America account #XXXXXXXX8374 which reflected interest income of $8,337, dividend income of $55,801, and a long term capital gain of $1,185,931.  The Defendant knew these amounts were required to be reported on his joint federal income tax return for tax year 2002 (Form 1040).  Defendant GOMEZ intentionally did not provide these documents to his return preparer so that the return preparer could include these items on his joint federal income tax return for the tax year 2002.  Defendant GOMEZ did not tell his return preparer about Bank of America trust account #XXXXXXXX8374.

25.    On or about October 14, 2003, Defendant GOMEZ signed his joint federal income tax return for tax year 2002 (Form 1040), and filed it with the Internal Revenue Service at the Austin Service Center, Austin, Texas.  At the time Defendant GOMEZ filed this tax return, he knew that the return did not include any of his income from OIF or from Bank of America trust account #XXXXXXXX8374.

26.    In summary, Defendant GOMEZ knowingly and willfully failed to report $1,533,390 for 2000, $912,807 for 2001, and $1,850,069 for 2002 in income on his joint federal income tax returns.  A detailed summary of these amounts is included at Attachment A.

27.    As a result of Defendant GOMEZ's intentional failure to report the aforementioned income, *after applying applicable deductions and credits*, the tax loss to the Internal Revenue Service is as follows:

| Year | Tax Due |
|------|---------|
| 2000 | $ 385,479 |
| 2001 | 155,685 |
| 2002 | 257,890 |
| Total | **$ 799,054** |

That, in summary, would be the evidence presented by the United States.

JOHNNY SUTTON
United States Attorney

By: _____
MATTHEW B. DEVLIN
Assistant United States Attorney

By: _____
ASHLEY C. HOFF
Assistant United States Attorney

United States Attorney's Office
816 Congress Avenue, Suite 1000
Austin, Texas  78701
(512) 916-5858
Fax (512) 916-5854

I, JOSEPH GRANT GOMEZ, have carefully read and reviewed the foregoing Factual Basis (including Attachment A) in its entirety, and have discussed it with my attorney. I freely and voluntarily admit that the statements contained in the Factual Basis thereto are true and correct and accurately describe the facts and circumstances of the offenses to which I am pleading guilty. In addition, I freely and voluntarily admit that the allegations contained in Counts One and Two of the Information are true and correct and that I am guilty of those charges.

JOSEPH GRANT GOMEZ
*Defendant*

Date   10-8-07

CHRISTOPHER M. GUNTER, ESQ.
600 W. 9th Street
Austin, Texas  78701
(512) 476-2494
Fax (512) 476-2497
State Bar No. 08624600
*Attorney for Defendant*

Date   10-8-07

## ATTACHMENT A

| | Description | 2000 | 2001 | 2002 |
|---|---|---|---|---|
| (1) | **Phoenix Holdings, Ltd.** (Per K-1) | | | |
| | (a) Ordinary Income | 837,857 | | |
| | (b) Interest Income | 89,912 | | |
| | (c) Long Term Capital Gains | 639,215 | | |
| (2) | **Phoenix Holdings, Ltd.** | | | |
| | (a) Interest Income | 100,000 | | |
| | (b) Interest Income | 8,173 | | |
| (3) | **Phoenix Holdings GP, Inc.** (Per K-1) | | | |
| | (a) Ordinary Income | 7,804 | | |
| | (b) Interest Income | 908 | | |
| | (c) Net Long Term Capital Gains | 6,457 | | |
| (4) | **Disposition of** | | | |
| | (a) Phoenix Holdings, Ltd. | (127,336) | | |
| | (b) Phoenix Holdings GP, Inc. | (29,600) | | |
| (5) | **Thompson MedTech Ventures** | | | |
| | (a) Net Long Term Capital Gains | | 353,723 | |
| (6) | **Thompson MedTech Ventures II** | | | |
| | (a) Net Long Term Capital Gains | | 20,275 | |
| (7) | **Bank of America** | | | |
| | (a) Interest Income | | 7,250 | 8,337 |
| | (b) Dividend Income | | 60,917 | 55,801 |
| | (c) Net Short Term Capital Gains (Losses) | | (1,825) | |
| | (d) Net Long Term Capital Gains | | 472,467 | 1,185,931 |
| (8) | **Overcollaterized Investment Fund** | | | |
| | (a) Interest Income | | | 600,000 |
| | **Total Unreported Income** | **$1,533,390** | **$912,807** | **$1,850,069** |